UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| MAXZENE WOODSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:14-CV-102-BG |
| | ) | ECF |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### I.    Statement of the Case

Pursuant to 42 U.S.C. § 405(g), *pro se* Plaintiff Maxzene Woodson brings this action appealing a decision of the Social Security Administration in which an Administrative Law Judge (ALJ) denied her application for disability insurance benefits (DIB) and supplemental security income (SSI) benefits.  The United States District Judge transferred this case to the United States Magistrate Judge for further proceedings.  The Commissioner did not consent to the jurisdiction of the United States Magistrate Judge.  In accordance with the order of transfer, the undersigned now files this Report and Recommendation.

The undersigned has liberally construed the arguments in Woodson's brief.  *See Haase v. Countrywide Home Loans, Inc.*, 748 F.3d 624, 629 (5th Cir. 2014) (acknowledging that the court liberally construes a *pro se* brief and applies less stringent standards to a party appearing *pro se*). After considering the parties' arguments and the administrative record, the undersigned recommends that the ALJ's decision should be affirmed and this action should be dismissed.

## II.    Background Facts

Woodson filed her application for DIB and SSI on June 17, 2011, alleging a disability onset date of October 15, 2010.  (Tr. 10.)  She claims that she became disabled at the age of forty-two due to sleep apnea, depression, anxiety, and diabetes.  (Tr. 115.)  She has a tenth grade education, obtained her nursing assistant certification, and has worked as a certified nursing assistant (CNA), janitor, and cook's helper.  (Tr. 18, 115–16, 125.)  She last worked as a CNA in October 2010.  (Tr. 28, 116.)  She does not drive, and she lives with her son, who helps with the cooking, cleaning, and errands.  (Tr. 35, 141, 143.)

Woodson reports pain affecting her entire body including her neck, shoulders, and lower back, as well as numbness in her arms and legs.  (Tr. 32.)  She also claims that as a consequence of sleep apnea, she suffers from confusion and grogginess.  (Tr. 29, 31–32.)  She further claims that she is unable to walk or stand for any length of time.  (Tr. 33–34.)  She takes medications for pain, depression, hypertension, and diabetes.  (Tr. 118, 182.)

On February 7, 2013, Woodson and a vocational expert testified at a hearing before an ALJ.  Woodson was not represented by counsel at the hearing.  The ALJ determined on March 13, 2013, that Woodson was capable of performing jobs that exist in significant numbers in the national economy despite her impairments and was not, therefore, disabled.  (Tr. 19–20.)  On May 30, 2014, the Appeals Council denied Woodson's request for review, and thereafter, Woodson brought this appeal.  Following denial of a request for review, the ALJ's decision became the Commissioner's final decision and is properly before the court for review.  *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding the Commissioner's final decision incorporates the Appeals Council's denial of a claimant's request for review).

2

On appeal, Woodson generally argues that she is entitled to social security benefits due to her impairments. She states that she stopped working due to a variety of health issues and she cannot afford medical treatment. Pl.'s Br., at 13, 81–85 (ECF No. 21). She also argues, for the first time on appeal, that she has a learning disability. *Id.* at 3, 81. Construing her Complaint liberally, Woodson contends that the ALJ erred in applying the proper legal standards used to evaluate the evidence and that substantial evidence does not support the ALJ's decision.

## III.    Standard of Review

The ALJ uses a five-step evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920 (2015).[1] A court, on the other hand, is limited to two determinations when reviewing a decision of the Social Security Administration: (1) whether the decision is supported by substantial evidence in the record and (2) whether the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g) (2015); *see, e.g.*, *Higginbotham*, 405 F.3d at 335. "Substantial evidence" means enough evidence "that a reasonable mind might accept it as adequate to support a conclusion." *Murray v. Astrue*, 419 F. App'x 539, 541 (5th Cir. 2011) (quoting *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)). Although the court cannot re-weigh evidence, it has a duty to "scrutinize the record in its entirety to determine the reasonableness of the decision reached by the [Social Security Administration] and whether substantial evidence exists to support it," including evidence favorable to the Commissioner as well as contrary evidence. *Id.* (quoting *Randall*, 956 F.2d at 109). If the Commissioner's findings are supported by substantial evidence, they are treated as conclusive and will be affirmed. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971).

---

[1] The Commissioner of Social Security uses regulations to determine whether a claimant is disabled. These regulations are located in the Code of Federal Regulations and can be accessed at www.ecfr.gov.

3

IV.     **Discussion**

In the first three steps of the five-step sequential evaluation, the ALJ makes determinations

regarding whether the claimant is currently working, whether she has an impairment or combination

of impairments that are severe, and whether her impairments meet or medically equal one of the

listings in the regulations.  20 C.F.R. § 416.920.  At the third step of the evaluation, the ALJ is

required to compare the claimant's impairments with listings contained in the regulations that are

considered severe enough to disable an individual.  *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000).

If the ALJ determines that the claimant's impairments meet or medically equal the criteria of one of

the listed impairments, the claimant is presumed to be disabled and qualifies for benefits without

further inquiry.  *Id.*  However, a claimant will not be presumed disabled under a listing unless her

impairments meet or equal each of the specified criteria of the listing at issue, and the burden is on

the claimant to make this showing.  *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990); *see*

*Dashti v. Astrue*, Civ. Action No. 4:11-CV-196-A, 2012 WL 1624150, at *3 (N.D. Tex. Apr. 9,

2012) (citing SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("As a threshold matter, the ALJ

is responsible for ultimately deciding the legal question whether a listing is met or equaled.").

In this case, the ALJ found at the first step of the evaluation that Woodson was not working

and determined at the second step that she suffered from degenerative disc disease of the spine,

obesity, diabetes, sleep apnea, hypertension, hyperlipidemia, and hepatitis, which he determined

were "severe" impairments.  (Tr. 12.)  He also determined that Woodson's breathing difficulties did

not constitute a severe impairment.  (Tr. 12.)  At the third step, the ALJ determined that Woodson

did not have an impairment or combination of impairments that meet or medically equal a listing in

the Commissioner's regulations, and he specifically noted that he considered Listings 12.04 and

12.06, which relate to mental disorders.  (Tr. 13.)

In order to meet the requirements of Listing 12.04, the claimant must satisfy the criteria in either paragraph "B" or "C" of that listing.  20 C.F.R. Part 404, Subpart P, App. 1, Listing 12.04. Under Listing 12.04, paragraph B, the claimant must show at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each for an extended duration.  *See id.*  The ALJ concluded that Woodson has mild restrictions in daily living, moderate difficulties in social functioning, moderate difficulties with concentration, persistence, and pace, and has not experienced any episodes of decompensation.  (Tr. 13.)  Thus, Woodson did not meet the requirements of Listing 12.04, paragraph B.

The ALJ also concluded that Woodson did not meet the requirements of Listing 12.04, paragraph C, because she did not demonstrate a "medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities," repeated episodes of decompensation, a residual disease process, or a current history of one or more years' inability to function outside a highly supportive living environment. (Tr. 13.)

Substantial evidence supports the ALJ's finding that Woodson does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments.[2]  In a Psychiatric Review Technique Form dated October 13, 2011, state agency consultant Matthew

---

[2] Because Woodson did not meet the paragraph B criteria for Listing 12.04, she also cannot meet the paragraph B criteria for Listing 12.06. *See Bordelon v. Astrue*, 281 Fed. App'x 418, 421-22 (5th Cir. 2008); *Willingham v. Comm'r of Soc. Sec. Admin.*, 4:12-CV-00242, 2014 WL 1050286, at *4 (citing *Bryant v. Astrue*, 2012 WL 4339099 (S.D. Miss. 2012)). Moreover, Woodson has not set forth evidence demonstrating that she could satisfy the paragraph C criteria in Listing 12.06, which requires the claimant to show a complete inability to function independently outside of her home. *See Willingham*, 2014 WL 1050286, at *5.

Turner, Ph.D., opined that Woodson was mildly restricted in activities of daily living and moderately restricted in maintaining social functioning, concentration, persistence, or pace. (Tr. 246.) He also concluded that she had not had any episodes of decompensation for an extended duration. (*Id.*) Dr. Turner noted that the alleged severity and effects of Woodson's symptoms were not wholly supported. (Tr. 248.) Dr. Arun Patel, who examined Woodson as part of a state disability psychiatric evaluation, noted that Woodson reported that she did not need help with feeding herself or with hygiene, paid her bills, was cooperative at the evaluation and made adequate eye contact. (Tr. 227–28.) Woodson herself reported being able to prepare her own meals once per day; performing small cleaning tasks; shopping for groceries approximately once per month for one hour; and paying bills, counting change, and using a checkbook and money order. (Tr. 142–43.) She also reported she did not need help with her personal hygiene or with feeding herself. (Tr. 227.) The ALJ concluded that, based on this evidence, Woodson is somewhat limited by her psychiatric symptoms, but they do not wholly compromise her ability to function independently, appropriately, and effectively on a sustained basis. (Tr. 17–18.)

Dr. Turner did note that Woodson was markedly limited in her ability to understand and remember detailed instructions, as well as in her ability to carry out detailed instructions. (Tr. 250.) He also opined that she was moderately limited in her ability to maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. (Tr. 251.) Accordingly, the ALJ accommodated Woodson's limitations by restricting her to jobs involving the ability "to

understand, to remember and to carry out simple tasks." (Tr. 14, 38.)  The ALJ's findings are supported by substantial evidence.

In her brief to the court, Woodson also asserts that the ALJ did not properly consider her pain in her back and legs.  Pl.'s Br. 81–83.  In her original application for benefits, Woodson did not list back and leg pain as one of her physical conditions that limited her ability to work.  (Tr. 115.) However, at the hearing, Woodson reported an inability to work due to back pain as well as shoulder pain.  (Tr. 32–34.)

The issue of whether a claimant's subjective complaints of pain amount to a disabling condition is within the discretion of the ALJ.  *See Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).  "[A] factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).  Pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (quoting *Selders v. Sullivan*, 914 F.2d 614, 618–19 (5th Cir. 1990)); *see* 42 U.S.C. § 423(d)(5)(A) (stating that subjective complaints of pain must be corroborated with the objective medical evidence).

Here, the ALJ found that Woodson was able to perform light work, despite her pain and degenerative disc disease, with certain nonexertional limitations.  (Tr. 14.)  The ALJ's decision is supported by substantial evidence.  Neither Woodson's treating physicians nor the state agency consultants opined that she has any functional limitations as a result of her impairments.  (Tr. 18.) On August 9, 2011, Dr. Piyush Mittal examined Woodson in connection with a state disability evaluation.  (Tr. 220–26.)  He opined that she suffered from, among other conditions, osteoarthritis, and obesity that contributed to minimal range of motion and pain in Woodson's back; diabetes that

caused "minimal numbness and tingling, but nothing very significant"; and bilateral knee pain that was stable. (Tr. 221–22.) He also noted that her gait was normal without the use of an assistive device. (Tr. 221.) In addition, Dr. James Wright, the state agency examiner who performed a physical residual functional capacity assessment of Woodson, opined that she was able to stand, walk, and sit approximately six hours in an eight hour workday and concluded that her alleged limitations were not wholly supported by her symptoms. (Tr. 255, 259.) Moreover, the record shows that Woodson's complaints of back pain were intermittent; several times she reported that she was experiencing no back pain, and she demonstrated full range of motion. (Tr. 267–68, 274, 280.) Accordingly, the ALJ's determination to limit Woodson to light work but not to include functional limitations in her RFC related to her back and leg pain is supported by substantial evidence.

With respect to Woodson's severe impairments of sleep apnea, diabetes, and hepatitis C, substantial evidence also supports the ALJ's determination that Woodson can perform light work with certain nonexertional limitations. Woodson asserted at the hearing and in her function report that she is unable to work due to fatigue, grogginess, and confusion as a result of her sleep apnea. (Tr. 29, 31–32, 140, 143–45.) As the ALJ noted, however, Woodson reported being diagnosed with sleep apnea and prescribed a CPAP machine in 2003, but she never complained that her symptoms were worsening despite several doctor office visits. (Tr. 17.) The ALJ also found that with regard to Woodson's diabetes and hepatitis C, "there are no other allegations of difficulties caused by diabetes [or hepatitis C]" other than minimal numbness and tingling. This finding is supported by the record. (Tr. 18, 222, 272.)

Based on the entire record, substantial evidence supports the ALJ's determination that Woodson's impairments are not disabling and that she has the capacity to perform light work with

certain limitations. *See Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988) (noting the Commissioner may decide what weight to accord various medical reports and it is for the Commissioner, not the courts, to weigh and resolve material conflicts in the evidence).

As a final consideration, the court notes that Woodson raises a new issue on appeal: that she is disabled due to a learning disability that has affected her since childhood. Pl.'s Br., at 3–5, 12–13, 81. In support of her contention, she attached records from Slaton Independent School District. Pl.'s Br. 6–11. Woodson did not submit these records to the ALJ, and she did not raise the issue of a learning disability until her appeal to this court. The record that was before the ALJ does not indicate that Woodson suffered from a learning disability, and she did not list a learning disability as one of her physical or mental conditions in her application for social security benefits. (Tr. 28-29, 115, 140–47, 229, 250.) The claimant has the burden of proving her disability. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). Although the ALJ has a duty to investigate and fully develop the facts, particularly in the case of a *pro se* claimant, his duty "does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record." *Id.* (citing *Pierre v. Sullivan*, 884 F.2d 799, 802–03 (5th Cir. 1989) (per curiam)) ("The ALJ's duty to investigate, though, does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record."). The ALJ gave Woodson an opportunity at the hearing to add more information into the record, but she did not put her learning disability before the ALJ. *See Castillo v. Barnhart*, 325 F.3d 550, 552–53 (5th Cir. 2003) (holding that although the ALJ was under a heightened duty to explore the record, the ALJ gave a *pro se* claimant the opportunity to add additional information to the record and this satisfied the ALJ's duty). Thus, the ALJ had no duty to develop the possibility of Woodson having a learning

9

disability. *See id.* (citing *Hones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (per curiam)).

Woodson also attached medical records to her brief for a condition that arose after the ALJ issued his decision. *See* Pl.'s Br., at 37–64. "New evidence may be grounds for remand if it is material; this materiality inquiry requires determining whether the evidence relates to the time period for which the disability benefits were denied, and whether there is a reasonable probability that the new evidence would change the outcome of the Commissioner's decision." *Castillo v. Barnhart*, 325 F.3d 500, 551–52 (5th Cir. 2003) (citing *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). Because the new evidence Woodson submitted does not address her physical condition during the time period for which benefits were denied, remand is not warranted. *See id.* at 552.

Although the court empathizes with Woodson's situation, the record does not support her claim that the ALJ failed to evaluate her impairments under the applicable standards or that substantial evidence does not support the ALJ's decision. Thus, the Commissioner's decision should be affirmed. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991) (noting while "we sympathize with plaintiff, we cannot agree that the ALJ failed either to compile a sufficient record or to back up his reasoning with substantial evidence").

## V.   Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court affirm the Commissioner's decision and dismiss Woodson's Complaint with prejudice.

## VI.   Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C.

§ 636(b)(1) (2015); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:    July 17, 2015.

NANCY M. KOENIG
United States Magistrate Judge

11